## THE ARAPAHOE INVESTMENT COMPANY v. PLATT.

1. CORPORATIONS—AGENCY—CONTRACTS OF PROMOTER.

One who is engaged in promoting the organization of a corporation cannot be its agent before it comes into existence. It is not bound by any of his precedent acts, except as by adopting them it makes them its own.

2. SAME—ADOPTION—PROOF.

A corporation may, by the acts of its officers, in reference to a contract made by its promoter, done with knowledge of its existence and terms, be held to have adopted the contract. The act of adoption need not be formal. Whatever would amount to a ratification of the unauthorized acts of an agent would be sufficient evidence of an adoption of the contracts of a promoter.

3. CORPORATIONS—OFFICER'S COMPENSATION.

In the absence of an express contract or some by-law, services rendered by a director of a corporation are presumed to be rendered gratuitously.

4. CONTRACTS.

Where, by the terms of a contract, the plaintiff was to have a salary, but it was not to be paid until the company was financially able to pay, held, that when it reached a state of financial ability he was entitled to receive what he had already earned, as well as what might accrue in the future.

*Appeal from the District Court of Arapahoe County.*

Mr. CHAS. M. BICE, for appellant.

Mr. W. S. DECKER and Mr. WM. KNAPP, for appellee.

THOMSON, J., delivered the opinion of the court.

The plaintiff, Platt, brought this action to recover the reasonable value of his time and services in behalf of the defendant, The Arapahoe Investment Company, from September 1, 1890, to October 1, 1891, less the sum of $900 paid

to him by the defendant. There was evidence tending to establish the following facts :

In May, 1890, the plaintiff, who then lived in the east, being in Denver for the purpose of investing some money in city real estate, met a Mr. Sage, who advised him to put his money into a company which he, Mr. Sage, was then endeavoring to organize. Sage proposed to him that if he would invest his money in stock of the proposed company, and come to Denver and devote his time and services to the company, he should be made a director and appointed its counsel ; and, as soon as the company was on its feet and able to pay salaries, a salary should be paid to him for his services. These services were to be rendered in the legal business of the company, in selling real estate for it, and in doing such other business as it might require. The proposition was accepted by the plaintiff, who then went back to his home, settled up his affairs there, and returned, reaching Denver about the middle of August, 1890. The defendant company, which was the identical company proposed by Mr. Sage, had been incorporated in the preceding June, the plaintiff having been made a director, and on the 1st of September, 1890, he put $2,500 into the company and entered into its service. The amount of salary which he should receive was not agreed upon between himself and Mr. Sage. On the first of the following October the directors of the company elected him its counsel for the ensuing year. He endeavored from time to time to have the amount of his salary fixed by the board, but did not succeed. He devoted his time to the company, performing such services as were required of him, although it had very little business for him to do. The condition of the company was not flourishing until August, 1891, when a wave of prosperity struck it, and it found considerable money in its treasury. The directors then determined that the company was in a condition to pay salaries. A committee was accordingly appointed by the board to adjust the salaries to be paid, which thereupon fixed the amounts which should be received by the president, the vice president and treas-

urer, and the secretary, to be paid from the 1st day of the preceding December. The committee reported that it was unable to agree upon the amount which should be paid to the plaintiff. After making an unsuccessful effort to have his own salary provided for, he threatened the board that he would sue the company if some action was not taken in his behalf, and was answered by one of the directors that he should have a salary, that they would vote him one. There was no disapproval of the remark by the board or any of its members. Mr. Sage, with whom the plaintiff had contracted, was a member of the board. Mr. Woodman, another director, had personal knowledge of the contract. At the meeting in August, upon the request of Mr. Bullock, who was also a director, and remarked that he was not fully informed in the matter, the plaintiff made a statement of the facts to the board. The board adjourned without taking any action upon the question. The plaintiff had, previous to this time, occupied the company's office, and, after the meeting, continued in its office until the first of the following October, when he left. In August, about the time of this meeting, the company paid the plaintiff $400, and a month afterwards $500 more. These two sums were all that he ever received.

The contract under which the plaintiff claims was made with Mr. Sage, who at the time was engaged in promoting the organization of the defendant company. It was a contract which, by its terms, was to be performed by the company after it should be incorporated. Mr. Sage was not, and could not be, its agent, because it had not yet come into existence. It was in virtue of his efforts, and through his instrumentality, that it was afterwards organized; but, prior to its organization, and at the time of the making of the contract, he was merely a promoter. The company which he assisted in creating was not bound by any of his precedent acts, except, as by adopting them, it made them its own. No liability attached to it on account of the contract between the plaintiff and Mr. Sage in virtue of the contract itself, and no such liability could arise unless it was voluntarily

assumed by the adoption of the contract on the part of the company. *Land and Water Co. v. Adams, ante,* p. 190. But it is not necessary that the act of adoption should be formal. Whatever would amount to a ratification of the unauthorized acts of an agent would be sufficient evidence of an adoption of the contracts of a promoter. 1 Beach on Private Corporations, secs. 197, 198.

In *Land and Water Co. v. Adams, supra,* we held that certain acts of the officers of the company in reference to a contract made by its promoter, done with knowledge of its existence and terms, were sufficient to justify a finding that the contract had been adopted by the company.

There is very little controversy over the facts of this case, and in so far as it may be said that they are disputed, they are set at rest by the verdict of the jury, which leaves them as we have stated them. In June, while the plaintiff was absent in the east, the defendant was incorporated, and the plaintiff was made a director. In October he was elected counsel of the defendant company for a year. In September, after his return, he entered into its office and there remained ready to do whatever might be required of him. The defendant availed itself of his services in so far as it had business to do. Some of the directors knew exactly the agreement under which he was serving the company, and the others must necessarily have known that he was there, occupying the company's office, in pursuance of some arrangement, the nature of which was easy of ascertainment. They were accepting his services, and if they deemed it important to know the details of his employment, they should have inquired. Afterwards, in August, 1891, while they were assembled as a board, the facts were laid before them fully, and they then knew all that the plaintiff himself knew. No suggestion looking to a disaffirmance of the contract between him and Sage was made. On the contrary, after he had given them the particulars of his contract, a statement by one of their number that the board would vote him a salary met with no dissent from any director. He continued in the service of

the company for some time afterwards without objection from any source. He received two sums of money aggregating $900, and if the payments were not made in pursuance of the contract, they are totally unexplained.

Here is a succession of facts which are explicable only upon the hypothesis that it was the intention of the company to carry out the contract made by Mr. Sage. The adoption of the contract is a legitimate if not a necessary inference from them, and they are amply sufficient to sustain the verdict of the jury in the case. It does not matter that the company had not sufficient business to keep the plaintiff employed. That was not his fault. The contract exacted of him the devotion of his entire time to the company. He was thus prevented from earning anything elsewhere, and it was the value of the time which he expended, rather than the value of any particular services rendered, by which his right of recovery should be measured. This suit is for the value of his time in connection with his services. He worked under a contract which was complete except in the matter of fixing the amount of his compensation, so that evidence of value was necessary to ascertain what that should be. Proof of the contract with Sage, and of the proceedings and occurrences subsequent to the incorporation of the defendant, was necessary to the establishment of his claim, and was properly allowed. We find upon the face of the record no error in the admission or rejection of evidence. The complaint does not recite the contract, and it is not requisite that it should. Under its allegations, proof of the contract was necessary to show the character of the plaintiff's claim, and as introductory to evidence of the value of his time and services.

The defendant requested four instructions, all of which were refused except the third. The first told the jury that the plaintiff was not entitled to recover on account of any services rendered by him as director of the defendant. It is true that in the absence of express contract, or some by-law, services as director of a corporation are presumed to be rendered gratuitously; but in view of the fact that by the terms

of this contract the plaintiff was to give his entire time to the company, doing whatever it required of him, it seems to us that the instruction would have been misleading, or, at least, confusing. However, the first instruction given embraced substantially what the defendant asked, so that discussion of the rejected instruction would result in nothing useful. The second contains the proposition that the plaintiff was entitled to compensation only for services actually rendered. Under the facts of this case, the giving of such an instruction would have been gross error. The fourth directed the jury not to consider the agreement with Sage, and informed them that the defendant would be liable only upon such contract as it made itself with the plaintiff. As the only agreement that ever was made was made with Sage, and as the only liability of the defendant arises from its adoption of that identical contract, the fallacy contained in this proposed instruction is obvious.

The instructions given seem to us to be remarkably clear, fair and accurate. It is objected to the first that it submitted to the jury the question whether the plaintiff was employed by the defendant to attend to its legal business, sell real estate and do whatever else was requisite concerning its business, and to give his exclusive time and attention to such business. It is the real estate clause to which exception is taken. There was some evidence that the company at one time proposed that sales of real estate which the plaintiff might make should be upon commission, but there never was any agreement to that effect. He did not assent to the proposition. The original contract with Sage was never changed in any particular, and that included the selling of real estate. Fault is found with the second instruction given because it directed the jury that if they should find that the plaintiff was entitled to recover, his compensation should be allowed from the time he commenced his engagement with the defendant until the time when he left its employment. This seems to us to be right. By the terms of the contract, the plaintiff was to have a salary, but it was

not to be paid to him until the company was financially able to pay. Without any qualifying or restrictive words, this would mean that when it reached a state of financial ability he would be entitled to receive what he had already earned as well as what might accrue in future. The company had become able to pay, and voted certain of its officers salaries, commencing with the first of December of the preceding year. His engagement commenced, and he entered upon his duties, two months earlier. The directors failed to vote him a salary, and he certainly was not bound by their action in making the other salaries commence on December first. If he was entitled to any compensation at all—and he certainly was—he was entitled to compensation for the entire time he was in the defendant's employ. To our minds this record is, in a marked degree, free from error throughout, and the judgment must be affirmed.

*Affirmed.*